## DANIELLY *v.* CHEEVES.

1. A declaration laying damages at one thousand dollars and alleging that the nuisance complained of rendered the premises almost worthless for cultivation during two specified years, is amendable by adding thereto an allegation that the nuisance rendered the premises totally useless for cultivation, and laying the damage at three thousand dollars. Thus construed, the amendment is consistent with the plan and purpose of the declaration, which was to recover damages with reference to crops for the two specified years, and not to recover permanent or prospective damages. That the amendment called itself a " count " is a mere misnomer; and that the counsel who procured the allowance of the amendment

now construes it as not confined to damages relatively to crops for the two years specified in the declaration, but as extending to and comprehending damage to the land for all time after the year 1881, is no reason for reversing the judgment allowing the amendment. If construed as he now contends it should be, it introduced a new cause of action, and should have been disallowed.

2. Properly construed, each and all of the declarations demurred to should be treated as claiming annual damages for successive years, and none of them as proceeding for permanent or prospective damages.

3. A nuisance to the plaintiff's cleared and tillable land (the injury consisting in overflowing or saturating the same with water),. although resulting from a cause intended to be perpetually operative and of a nature so to operate gradually and continuously, created in the year 1878, was actionable in 1884 for damage on account of diminished or suspended fertility occasioned thereby with reference to the crops for the years 1882 and 1883; and the same nuisance having been continued with like effect, was again actionable in 1888 for damage on account of diminished or suspended fertility with reference to the crops for the years 1884, 1885, 1886 and 1887; and the same nuisance having been continued with like effect, was again actionable in 1889 for damage on account of diminished or suspended fertility with reference to the crop for the year 1888. If, however, the effect of the nuisance, at any stage, was to destroy wholly and permanently the fertility of the land, so that abating the nuisance and withdrawing the excess of water occasioned thereby would not restore the land and render it again fertile, the right to maintain successive actions relatively to subsequent years ceased, and a single action and recovery for such destruction could be maintained and would be final.

4. In adjudicating upon a demurrer to a declaration, or to a series of declarations which have been consolidated for trial, the court cannot look beyond the declarations themselves so as to take notice of the contents of the declaration filed in a previous action between the same parties and touching the same nuisance and damages therefrom relatively to crops or rents for previous years. This cannot be done, although a previous action be, in one of the declarations demurred to, mentioned in these terms: " Petitioner shows that he has already filed his suit for the recovery of damages for the years 1878, 1879, 1880 and 1881, which is now pending in court"; no exhibit of the declaration in that action being appended, nor any leave to refer to it being therein prayed for. Unless all facts necessary to establish the defence of a former recovery for the same cause of action appear on the face of the declaration, this defence is not matter for demurrer, but for plea only.

August 14, 1894.

Actions for damages.    Before Judge HUNT.    Monroe superior court.    September term, 1893.

Danielly brought suit for damages against Cheeves, the case being returnable to the February term, 1882, of the superior court. That case came to the Supreme Court twice. 74 *Ga.* 712; 80 *Ga.* 114. A recovery of $125 by plaintiff was sustained by the decision in 80 *Ga.* Three subsequent suits were brought by plaintiff: the first on August 5, 1884; the second, February 7, 1888; the third, February 5, 1889. By agreement these three were consolidated, and came on for trial at the same time, defendant demurring to the declarations on various grounds. Plaintiff was allowed to amend the declaration of 1884, over defendant's objection that the amendment introduced a new cause of action; to which ruling defendant excepted *pendente lite.* In the argument on defendant's demurrer, his counsel was permitted, over objection, to refer to plaintiff's declaration in the suit brought in 1882; and plaintiff assigned this as error. The demurrer was sustained, and the plaintiff excepted.

The declaration of 1884 alleges, that defendant has damaged plaintiff $1,000 ; for that in 1878 plaintiff owned 60 acres of lowlands worth about $100 per acre for cultivation, lying on the waters of Tobesofkee creek; which lands, being fertile and never liable to overflow, always responded to cultivation, yielding from 50 to 75 bushels of corn per acre. At the same time defendant owned 80 acres of lowland lying on Yellow creek, subject to overflow and therefore valueless, the bed of said creek being too shallow to carry off the volume of water. In 1878, for the purpose of improving his own land and in disregard of plaintiff's rights, defendant cut a ditch from a point above his lands on Yellow creek to a point on Tobesofkee creek, causing, from the increased volume of water, the channel of said last creek, which theretofore was from 7 to 10 feet deep along plaintiff's lands,

to fill with sand and mud, and even in dry weather causing said lands to be saturated and charged with water so as to render them almost worthless for cultivation; so that, though said lands are planted and cultivated with great expense and care, they have failed to respond, and are now wholly and utterly worthless. "Petitioner shows, that he has already filed his suit for recovery of damages for the years 1878, 1879, 1880 and 1881, which is now pending in court"; and that, owing to said overflow of water, defendant has damaged plaintiff $500 for each of the years 1882 and 1883. The amendment allowed over defendant's objection alleges, that he has, in the manner aforesaid, damaged plaintiff $3,000; for that the acts complained of "injured and damaged the lands of plaintiff by making them totally useless for cultivation since 1881, in the sum aforesaid, and before filing of this suit and after the filing of the suit to the February term, 1882."

The declarations of 1888 and 1889 contain allegations like those already recited, except as follows: That of 1888 lays damages at $2,000; that of 1889, at $500. Both add, after the allegation that plaintiff's lands are caused to be saturated with water so as to render them almost useless for cultivation, the words, "within a short while thereafter, and in the course of a few years utterly useless"; and omit the words, "and the same are now wholly and utterly worthless." The declaration of 1888 alleges, that plaintiff has already filed his suit for damages for the years up to 1883, and that by the cutting of the ditch he has lost his crops for 1884, 1885, 1886 and 1887, of the yearly value of $500. The declaration of 1889 alleges, that he has filed suit for damages for the years up to 1888, and brings this suit to recover for that year; that defendant, by the acts complained of, has deprived him of all of said land for cultivation, and he is no longer able to make any crops

thereon, as it is too wet to cultivate; and that it was worth $500 during 1888, and defendant by his conduct has injured him in that amount.

The grounds of the demurrer are sufficiently apparent from the opinion.

J. S. BOYNTON, C. A. TURNER and BERNER & BLOODWORTH, for plaintiff. GUSTIN, GUERRY & HALL and W. D. STONE, for defendant.

LUMPKIN, Justice.

Several actions which had been instituted by Danielly against Cheeves were consolidated in the superior court. This litigation originated from the same cause as that which was the foundation of the lawsuit between these same parties, reported in 80 *Ga.* 114. The official report consists of a statement showing how the various questions now presented for adjudication arose in the court below. The rulings of this court have been condensed into the propositions announced in the headnotes.

1. There was no merit in the exceptions *pendente lite* filed by defendant's counsel to the allowance of the amendment of February 11th, 1893, to the plaintiff's declaration of August 5th, 1884. That declaration complained that the plaintiff's land was rendered almost worthless *for cultivation* during two specified years. Taking a fair view of all the allegations contained in the amendment, it may be properly construed as claiming additional damages upon the theory that the nuisance which gave rise to the damages alleged in the declaration had rendered the premises totally useless *for cultivation* during the two years mentioned. Thus construed, the amendment is consistent with the original plan and purpose of the declaration, the object of which was to recover damages with reference to crops for these two particular years, and not to recover permanent or

prospective damages. It is true that the pleader, in the amendment, designated it as a "count"; but this was a mere misnomer and is of no material consequence. In the argument here, the counsel at whose instance this amendment was allowed seemed to construe it as not being confined to damages relatively to crops only for the two years specified in the declaration, but as extending to and comprehending damage to the land itself for all the time elapsing after the year 1881. In taking this position, the counsel was seeking to show that the purpose of the amendment was to make it clear that the permanent injury to the land had not occurred at the time of the filing of the first suit against Cheeves. Were we to give the amendment the construction just indicated, we would be constrained to hold that it introduced a new cause of action, and should have been disallowed; but we do not think that construction would be the proper one, and it is our duty to shape our judgment in accordance with our own opinion as to the real nature of the amendment, which is as stated above. So doing, no reason for reversing the judgment allowing the amendment appears, and therefore the exceptions *pendente lite* are overruled.

2. After a careful examination and study of each and all of the consolidated declarations, we are of the opinion that, properly construed, they should be treated as claim-damages for successive years, and none of them as proceeding for permanent or prospective damages. It is true they contain expressions which would seem to indicate the latter purpose; but viewing them all together, we think it more consistent with truth and fairness to hold that the object of each and all of them was to recover for losses sustained in successive years because of the fact that the plaintiff's land was rendered unfit for cultivation, and for that reason he was unable to make crops upon the same. The declaration of 1888

alleges that the plaintiff has already filed his suit for damages for the years up to 1883, and that by the cutting of the ditch he has lost his crops for the years 1884, 1885, 1886 and 1887, of the yearly value of $500.00. The declaration of 1889 alleges that the plaintiff has already brought suit for damages for the years up to 1888, and that he has been deprived of his land *for cultivation* and is no longer able to make crops thereon, and claims damages to the amount of $500.00 for the year 1888. It does not appear that in any of the suits the plaintiff seeks to recover the value of his land upon the theory that it had been rendered totally worthless for all purposes and consequently was of no value whatever. Some reason for concluding that this was not the plaintiff's theory may be drawn from the fact that he did not at once, and long prior to the year 1889, bring a suit for the total value of the land.

3. The third head-note, in connection with what has already been said, is comprehensive enough to render unnecessary a restatement of its contents; and upon the doctrine there announced, it is evident that the statute of limitations has no application whatever to the several actions, if the plaintiff succeeds by evidence in maintaining them as laid. Until it has been definitely established by the defendant that the abatement of the nuisance would in no way improve the land or ameliorate its existing condition with reference to the production of crops, the plaintiff has the right to assume that the nuisance will be abated, and to recover year by year for the injury done him by its maintenance. If, however, at any period in the past, the effect of the nuisance has been to destroy wholly and permanently the fertility of the land, so that even abating the nuisance would not restore the land and render it again fertile and fit for cultivation, the right to maintain successive actions relatively to subsequent years ceased at that period. With

reference to this question, we are not, of course, prepared to say what the evidence may disclose, and we intimate no opinion concerning it, one way or the other. But it is a question which ought to be developed and elucidated at the next trial.

4. It is quite clear that in adjudicating upon a demurrer to a declaration, or a series of declarations which have been consolidated for trial, the court cannot properly take notice of a declaration previously filed by the same plaintiff against the same defendant touching the same subject-matter. A declaration, when demurred to, must stand or fall upon its own merits. This is true, although the declaration in hand may refer in general terms to the one previously filed. If the contents of the declaration last referred to were set out substantially or in full in the pending declaration, the question would be different. Otherwise, the existence and contents of the former declaration should be taken advantage of, in so far as it may avail the defendant, by plea, for it cannot be properly urged by way of demurrer.

> *Judgment on main bill of exceptions reversed.*
> *On exceptions pendente lite, affirmed.*