## 26720. WARREN *et al. v.* GEORGIA POWER COMPANY.

Decided May 20, 1938.

C. L. Redman, for plaintiffs.

C. C. King, MacDougald, Troutman & Arkwright, Dudley Cook, for defendant.

GUERRY, J. The facts set out in the petition brought by R. W. and L. O. Warren against the Georgia Power Company are, in substance, as follows: The petitioners are owners of a certain tract of land lying in Newton County, containing 276 acres more or less, and situated on the Yellow River. The defendant corporation is engaged in the business of generating and distributing electricity to the general public in this State. The power for generating said electricity is obtained by means of a dam across the Ocmulgee River in Butts County, which causes the water of the river and its tributaries to back up for about 18 miles, covering and submerging more than 4800 acres in Butts, Jasper, and Newton Counties. This dam was erected in 1910 and 1911 by the Central Georgia Power Company. On September 25, 1928, this corporation merged with the defendant, and the defendant agreed to become liable for all debts, liabilities, and duties of the Central Georgia Power Company. As to the effect of this agreement in regard to notice to abate, required to be given to alienee of land wherein there exists a nuisance, see *Georgia Power Co. v. Moore,* 47 *Ga. App.* 411 (170 S. E. 520). The backwater of the dam extends above the northern boundary of the plaintiffs' lands, and alongside the entire eastern boundary. Included in the plaintiffs' farm is a tract of bottom land, containing about 50 acres, which lies adjacent to said pond of backwater on the Yellow River. This tract is drained by means of ditches running from east to west to said river, and also by a large branch having the same course.

Until several years before the bringing of the present suit these lands were fertile, capable of producing more than 50 bushels of corn per acre, and had a reasonable rental value of $10 per acre, and in addition there were about 125 acres of uplands in cultivation, and the whole farm had a reasonable rental value of $850. The dam in question, when originally constructed, had therein two large openings at the bottom and near the center thereof, which could be raised or lowered as necessary, and which, when done, would cause the mud, settlings, and accumulations therein to wash out, and would keep the channel from becoming filled up with sand and mud that would be washed into the river-bed through excessive rains. These gates could be lowered when necessary, but the defendant negligently failed to do so, which would, if so used, have kept the river channel cleaned out. Because of the gradual filling up of the channel of the river, it has caused the branch as above described to overflow the bottom lands, causing them to become soggy, wet, and saturated with backwater and overflow from said river, which prevents the plaintiffs from draining their land, and renders said land unfit for cultivation, "and same can not be rented or used as before said nuisance was created, or continued by this defendant, all of which was caused by the continuance of said nuisance, which is being negligently continued and maintained."

We quote the following allegations from the petition: "Petitioners show that the backwater in said pond of defendants, caused by the building of said dam across said river, in causing the water to flow back and cover lowlands adjacent and near petitioners' said described lands, in which is left in and allowed to grow bushes, brush, and vegetable matters, all of which decays and rots therein, and that the said backwater is stagnant, in which is breeded mosquitoes in unusual large quantities, and the decayed vegetable matter therein emits unpleasant odors, and said mosquitoes and unpleasant odors infest and permeate all of the said described lands, including the dwellings and tenant-houses thereon, and causes same to become unfit for habitation. . . Petitioners show that prior to the filling up of their ditches on their said lands, . . and the breeding of said malaria bearing mosquitoes in the stagnant water, . . their premises was productive, and healthy and was well worth the sum of $1200 per year rent, but

in its present condition . . it is not worth for rent more than $200 per year for rent; therefore petitioners charge that they have been damaged and injured for the past four years prior and next. preceding the filing [of] this petition, to wit, the sum of $4000." The petition also claims damages in the sum of $100 per year, by reason of the backwater cutting off their egress and ingress to other parts of their property.

At the conclusion of the introduction of evidence by the plaintiff, the court, upon motion of counsel for defendant, passed the following order: "The within case coming on for trial in its regular order, and after the plaintiff closed, a motion was made by the defendant to dismiss on the grounds that the damages from which the plaintiffs' cause of action arose accrued more than four years prior to the filing of this case. After argument of counsel for plaintiff and defendant, it appearing from the evidence that the property sued for herein was totally damaged and taken more than four years before the filing of this suit, the motion of defendant is granted, and the case dismissed as being barred by the statute of limitations." The result of this order is the same as if a nonsuit had been granted. We are of the opinion that a nonsuit was justified in the present case, and on grounds different from that recited by the judge in his order; and for this reason the judgment will be affirmed, with no ruling on the question of the bar. of the statute of limitations. In order to consider the question with regard to the statute of limitations, it is first necessary to determine the nature of the case made by the pleadings; and when this is done, and the evidence is considered, it is apparent that the plaintiff failed to sustain his case as pleaded, and therefore that a nonsuit was proper; and we do not. deem it necessary to further determine at this time the plaintiffs' right to damages, in view of the statute of limitations, if they had made out their case, or their rights in the same connection had they brought and sustained a different form of action.

The defendant is a quasi-public corporation. This appears from the pleadings and the evidence, and is a fact of which this court will take judicial notice. *Sheppard* v. *Ga. Ry. &c. Co.,* 31 *Ga. App.* 653, 655 (121 S. E. 868). It is vested by law with authority to create and maintain the dam in question, and is. clothed with the power of eminent domain. Any damage to or destruc-

tion of property resulting from the exercise of its lawful authority in the conduct of its franchise, through the proper erection and proper and prudent operation of a dam, must be compensated for under the provision of the constitution that "private property shall not be taken, or damaged, for public purposes, without just and adequate compensation being first paid" (Code, § 2-301); for which the sole measure of damages is the diminution in the market value of the property thus taken or damaged *(Atkinson* v. *Atlanta,* 81 *Ga.* 625, 7 S. E. 692; *Mayor &c. of East Rome* v. *Lloyd,* 124 *Ga.* 852, 53 S. E. 103; *Georgia Railroad &c. Co.* v. *Maddox,* 116 *Ga.* 64, 42 S. E. 315; *Mayor &c. of Albany* v. *Sikes,* 94 *Ga.* 30, 20 S. E. 257, 26 L. R. A. 653, 47 Am. St. R. 132; *Burrus* v. *Columbus,* 105 *Ga.* 42, 31 S. E. 124; *Felton* v. *State Highway Board,* 47 *Ga. App.* 615, 171 S. E. 198; *Georgia Power Co.* v. *Moore,* supra; *City of Macon* v. *Douglas,* 45 *Ga. App.* 798, 165 S. E. 922; *City of Atlanta* v. *Due,* 42 *Ga. App.* 797, 157 S. E. 256; *City Council of Augusta* v. *Lamar,* 37 *Ga. App.* 418, 140 S. E. 763; *Sheppard* v. *Ga. Ry. &c. Co.,* supra), and not as for a continuing, abatable nuisance, for which the measure of damages is generally stated to be the diminution of the yearly rental value of the property during its existence and within the statute of limitations, plus any actual damage sustained *(Reid* v. *Atlanta,* 73 *Ga.* 523; *Smith* v. *Atlanta,* 75 *Ga.* 110; *Athens Manufacturing Co.* v. *Rucker,* 80 *Ga.* 291, 4 S. E. 885; *Danielly* v. *Cheeves,* 94 *Ga.* 263, 21 S. E. 524; *City of Brunswick* v. *Tucker,* 103 *Ga.* 233, 29 S. E. 701, 68 Am. St. R. 92; *Langley* v. *Augusta,* 118 *Ga.* 590, 45 S. E. 486, 98 Am. St. R. 133; *Farley* v. *Gate City Gas-Light Co.,* 105 *Ga.* 323, 31 S. E. 193; *Ketron* v. *Sutton,* 130 *Ga.* 539, 61 S. E. 113; *Hodges* v. *Pine Product Co.,* 135 *Ga.* 134, 68 S. E. 1107, 33 L. R. A. (N. S.) 74, 21 Ann. Cas. 1052; *Raymond Boating & Fishing Club* v. *Brewer,* 38 *Ga. App.* 767, 145 S. E. 464), except, of course, where it affirmatively appears that because of the existence of the nuisance the property has been rendered permanently useless, even if the nuisance were abated. In such case the measure of damage would of necessity be the diminution of the market value of the property. *Central Georgia Power Co.* v. *Stubbs,* 141 *Ga.* 172 (80 S. E. 636); *Farley* v. *Gate City Gas-Light Co.,* supra; *Ketron* v. *Sutton,* supra; *Southern Railway Co.* v. *Cook,* 117 *Ga.*

286 (43 S. E. 697); *Mulligan* v. *Augusta,* 115 *Ga.* 337 (41 S. E. 604).

It is quite true that if a public or quasi-public corporation negligently maintains and operates a properly erected structure, so as to injure the property of a private citizen, such acts therefore being unnecessary and beyond the authority of such corporation in the full and complete enjoyment of its franchise, it will be liable in damages for the injury thus occasioned, as for a nuisance. *Langley* v. *Augusta,* supra; *Ga. R. &c. Co.* v. *Maddox,* supra; *Atlantic & Birmingham Ry. Co.* v. *Montezuma,* 122 *Ga.* 1 (49 S. E. 738); *Central Ga. Power Co.* v. *Nolen,* 143 *Ga.* 776 (85 S. E. 945); *Ga. Power Co.* v. *Moore,* supra; *City of Atlanta* v. *Fleming,* 40 *Ga. App.* 830 (151 S. E. 678); *City of Macon* v. *Macon Paper Co.,* 35 *Ga. App.* 120 (132 S. E. 136); *City of Albany* v. *Jackson,* 33 *Ga. App.* 30 (125 S. E. 478); *Sheppard* v. *Georgia Power Co.,* supra. This is the exact theory of the present petition. It is expressly alleged that the dam was negligently maintained, that the overflow of the plaintiffs' lands constituted a nuisance; and the prayer is for the diminution of the rental value of the land for the four years immediately preceding the filing of the suit, which damages are appropriate only to that form of action. See cases above cited. The allegations of the petition are not ambiguous in the above respect, and therefore the principle applied in *Smith* v. *Floyd County,* 36 *Ga. App.* 554 (137 S. E. 646), and *City of Atlanta* v. *Due,* supra, has no application here. Cf. *City Council of Augusta* v. *Lamar,* supra.

The evidence for the plaintiff failed entirely to show the maintenance of a nuisance by the defendant, as alleged. While the petition set up the existence of certain gates in the dam, which if properly used would have prevented the gradual filling up of the bed of the stream and the consequent overflow of the plaintiffs' land, and also the failure of the defendant so to use the gates, and while the plaintiffs' evidence disclosed the existence of the gates in the dam and also disclosed the gradual filling up of the bed of the stream, it failed to show that the defendant had not used the gates, or, if they had been used to an extent which would not have materially interfered with the operation of the dam for the purpose of obtaining electrical power, that the filling up of the bed of the stream and the consequent damage of the plain-

tiffs' land would not have occurred. This was a matter of proof, in the absence of which it is to be presumed that the defendant has properly maintained the dam, and that the matters of which the plaintiffs now complain were the necessary and concomitant result of such maintenance. *Sheppard* v. *Ga. Ry. &c. Co.,* supra. This being true, it follows that in so far as complaint is made by the plaintiffs of the overflowing of their lands, their evidence merely establishes the proper exercise of its franchise by the defendant, and therefore such overflow resulting therefrom can not in law be held to be a nuisance. The plaintiffs' case in this connection was not made out as pleaded, and the damages sought were not recoverable. "'That which the law authorizes to be done, if done as the law authorizes it to be done, can not be a nuisance.'" *Georgia Power Co.* v. *Moore,* supra. It is to be observed in this connection, however, that this rule extends to protect a quasi-public corporation in the exercise of its franchise only in so far as its exercise does not create a condition tending to destroy the lives or injure the health of others. In the creation of such a condition, the public necessity and convenience which are the basis for the grant of the right of eminent domain thereby cease to be factors, and the special immunity of the corporation ceases. The authorities question the right of the legislature to expressly authorize such a condition, and it is said that "it is never to be presumed that the law intended to authorize the operation of a thing which would seriously endanger the health and lives of its citizens." *Towaliga Falls Power Co.* v. *Sims,* 6 *Ga. App.* 749 (65 S. E. 844), and cit. The above principle has been uniformly adhered to by our courts for many years. *Reid* v. *Atlanta,* supra; *Smith* v. *Atlanta,* supra; *Holmes* v. *Atlanta,* 113 *Ga.* 961 (39 S. E. 458); *Mulligan* v. *Augusta,* supra; *City Council of Augusta* v. *Marks,* 124 *Ga.* 365 (52 S. E. 539); *Central Georgia Power Co.* v. *Stubbs,* supra; *Town of Rentz* v. *Roach,* 154 *Ga.* 491 (115 S. E. 94); *City of Atlanta* v. *Warnock,* 91 *Ga.* 210 (18 S. E. 135, 23 L. R. A. 301, 44 Am. St. R. 17); *Long* v. *Elberton,* 109 *Ga.* 28 (34 S. E. 333, 46 L. R. A. 428, 77 Am. St. R. 363); *Central Georgia Power Co.* v. *Nolen,* supra; *Bainbridge Power Co.* v. *Ivey,* 38 *Ga. App.* 586 (144 S. E. 825); *City of Macon* v. *Roy,* 34 *Ga. App.* 603 (130 S. E. 700); *City of Atlanta* v. *Holcomb,* 20 *Ga. App.* 601 (93 S. E. 259); *Bainbridge Power Co.* v. *Ivey,* 41 *Ga.*

*App.* 193 (152 S. E. 306). While in the present case the petition, in that part above quoted, alleges that in the backwater of the dam the defendant left and allowed to grow "bushes, brush, and vegetable matters, all of which decays and rots therein, and that the said backwater is stagnant, in which is breeded mosquitoes in unusual large quantities, and the decayed vegetable matter therein emits unpleasant odors, and said mosquitoes and unpleasant odors infest and permeates all of the said described lands, including the dwellings and tenant-houses thereon, and cause same to become unfit for habitation;" and that the rental value of their farm has been decreased because of the said overflow and the "breeding of said malaria-bearing mosquitoes in the stagnant water," the proof of which alleged condition would most assuredly establish the maintenance of a nuisance by the defendant, yet the evidence for the plaintiffs failed to substantiate these broad allegations. Therefore in no respect have the plaintiffs sustained their case. It is true that the evidence discloses a taking and damaging of the property of the plaintiffs by the defendant, for which our constitution requires that just and adequate compensation be paid. However, as we have already pointed out, the plaintiffs' suit is not one for the recovery of such damages, but is an action in tort for the maintenance of a nuisance. "A plaintiff can not recover except upon the cause of action as laid in his petition." *Graham* v. *Jones,* 39 *Ga. App.* 610 (147 S. E. 902). The fact that the proof establishes some other cause of action does not authorize a recovery. See *Thompson* v. *Tasker,* 134 *Ga.* 80 (67 S. E. 446) ; *Groover* v. *Simmons,* 163 *Ga.* 778 (137 S. E. 237) ; *Smith* v. *Hendricks,* 43 *Ga. App.* 361 (158 S. E. 764) ; *Williams* v. *Eldridge,* 53 *Ga. App.* 445 (186 S. E. 217). For the reasons stated above, the judgment dismissing the plaintiffs' case is

*Affirmed. MacIntyre and Sutton, JJ., concur. Broyles, C. J. disqualified.*